B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Kenneth Standley | Jason Troy Standley and Shannon Davina STandley |

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
|---|---|
| C. Daniel Herrin of Herrin Law, PLLC<br>4925 Greenville Ave., Suite 455<br>Dallas, TX 75206 \| TEL: 469-607-8551 | |

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| ☐ Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor    ☐ Other<br>☐ Trustee | ☒ Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

11 USC 523(a)(2)(A), 11 USC 523(a)(2)(B), 11 USC 523(a)(4), 11 USC 523(a)(6)
11 USC 727(a)(4)(A)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☒ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☒ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☒ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☒ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $10.5 million |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Jason Troy Standley and SHannon Davina Standley | BANKRUPTCY CASE NO.<br>22-40689 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Eastern District | DIVISION OFFICE<br>Sherman | NAME OF JUDGE<br>Rhodes |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>*C. Daniel Herrin* | | |
| DATE<br>9/5/2022 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>C. Daniel Herrin | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **JASON TROY STANDLEY and** | § | **CASE NO.   22-40689-BTR** |
| **SHANNON DAVINA STANDLEY** | § | |
| **Debtors** | § | **CHAPTER 7** |
| | § | |
| | § | |
| **KENNETH STANDLEY** | § | |
| | § | |
| **Plaintiff** | § | **ADV. NO. _____** |
| | § | |
| **v.** | § | |
| | § | |
| **JASON TROY STANDLEY and** | § | |
| **SHANNON DAVINA STANDLEY** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Kenneth Standley, pursuant to Section 523 and 727 of the United States Bankruptcy Code and Rule 7001 of the Federal Bankruptcy Rules, complain of Debtors, Jason Troy Standley and Shannon Davina Standley (the "Debtors" or "Defendants"), and hereby files this Complaint to deny dischargeability of debt and to revoke the Debtors discharge and in support would respectfully show as follows:

## PARTIES AND JURISDICTION

1.     Plaintiff in this proceeding is KENNETH STANDLEY, an individual who can be served by and through his attorney of record, C. Daniel Herrin of Herrin Law, PLLC at the following address:  4925 Greenville Ave., Suite 455, Dallas, Texas 75206.

2.      Defendants, JASON TROY STANDLEY and SHANNON DAVINA

STANDLEY are the Debtors in the underlying Chapter 7 case. Defendants may be served at their

personal residence located at 11600 Ranch Road, Copper Canyon, Texas 76226.

3.      This Court has jurisdiction over the parties and this controversy under 28 U.S.C.

§1334, 11 U.S.C §523, 11 U.S.C. §727.

4.      This is a core proceeding pursuant to 28 U.S.C. §157.

5.      Venue is proper pursuant to 28 U.S.C. §§1408 and 1409 because the Chapter 7

case is pending in this district and division and the cause of action asserted herein arose under

Title 11 or is related to a case under Title 11.

## **BACKGROUND**

6.      In 2015, Kenneth Standley ("Creditor" or "Kenneth") resigned as a director of the

P.M. Standley Corp. ("Dealership"), leaving Jason Standley as the sole director. In November

2017, Kenneth Standley resigned all officer positions at Dealership.

7.      In 2019, Jason Standley ("Jason") informed Kenneth Standley, that he was

starting a new relationship with BTH Bank for the PM Standley Corp automotive dealership (the

"Dealership").  During this time, Kenneth was no longer operating or in control of the

Dealership.  At Jason's request, Kenneth provided Jason a financial statement.

8.      Shortly after providing his financial information, Kenneth Standley became

concerned with how the Dealership was being ran and decided he would no longer guaranty any

loans for the Dealership.  Kenneth communicated this to Jason and asked that Jason rescind the

financial statements as he was no longer going to guarantee the loans. Jason refused to provide

financials or other information to Kenneth concerning the dealership and/or the loan amounts he

was requesting. Based on this and his lack of access to the Dealership, Kenneth stated he was not

going to enter into any loan arrangement on behalf of the Dealership.

9.      On or around June 12, 2019, Kenneth traveled out of the country and did not

return to the United States until June 27, 2019.  During this time, Kenneth received a call from

Jason advising him that some loan documents had been prepared by BTH Bank for the

Dealership.  At that time, Kenneth again told Jason he was no longer willing to guarantee any

loans for the Dealership.

10.      The phone call wherein Kenneth informed Jason that Kenneth was not willing to

sign any guaranty agreement(s) was observed/heard by two witnesses who have confirmed

Kenneth instructed Jason that Kenneth was not willing to sign any guaranty for the Dealership .

*See* Affidavit of Jordan Standley attached hereto as <u>Exhibit A</u> and Affidavit of Renee Standley

attached hereto as <u>Exhibit B</u>.

11.      In early 2019, Jason Standley told Paul Noonan and Paul Pogue that he may need

them to sign guarantees on behalf of the Jason Standley Trust related to a loan he was obtaining

for the Dealership. On or around June 20, 2019, Jason Standley sent an email to Paul Pogue's

administrative assistant Kari Payne attaching loan documents. Kari Payne responded that she

was going to forward the documents to Paul Pogue's attorney to review. Jason Standley then sent

another email on June 20, 2019 stating that **"Don't waste any time on it as the trusts should**

**never had been included in the deal and we will be reworking the contracts a different**

**way."** *See* <u>Exhibit L.</u> Unbeknownst to Kenneth Standley, Paul Noonan and Paul Pogue

("<u>Parties</u>"), Jason Standley forged the signatures of the Parties, as further described below.

**A.      First Set of Forged Loan Documents (Loans 1 and 2).**

12.    **Loan 1.**  The first loan was signed on June 19, 2019 in the amount of $1.5 million dollars and is identified as Loan #9163807 ("Loan 1").  Loan 1 was apparently documented by a Business Loan Agreement, Promissory Note, Commercial Security Agreement, and three Commercial Guaranty documents.  These documents related to Loan 1 are attached hereto to as **Exhibit C**.

13.    The Business Loan Agreement, Promissory Note, and Commercial Security Agreement for Loan 1 appear to be signed by "Jason T Standley, President of The P.M. Standley Corporation dba P.M. Standley Motorcars."  *See* Exhibit C.

14.    The first Commercial Guaranty document for Loan 1 appears to be signed by Jason Standley in his personal capacity.  *See* Exhibit C.

15.    The final two Commercial Guaranty documents for Loan 1 contain the forged signatures of Kenneth Standley, Paul Noonan, and Paul Pogue (Noonan and Pogue's forged signatures were purportedly on behalf of the Jason Standley Trust).  *See Id.*  None of the Parties ever signed any guaranty for Loan 1 or gave their permission for another party to sign on their behalf.  Furthermore, Kenneth Standley expressly told Jason Standley over the phone, that he was not going to guaranty the loans.

16.    Despite not having permission, Jason Standley personally forged these signatures on the Commercial Guaranty documents for Loan 1 or otherwise directed another person or persons to forge the signatures.

17.    **Loan 2.**  The second loan was also signed on June 19, 2019 and was for $8.5 million dollars, with a loan number of 9163815 ("Loan 2"). Loan 2 was apparently documented with the same type of documents as Loan 1.  The documents related to Loan 2 are attached hereto as **Exhibit D**.

18.     Like the first loan, the Business Loan Agreement, Promissory Note, and Commercial Security Agreement for Loan 2 appear to be signed by "Jason T Standley, President of The P.M. Standley Corporation dba P.M. Standley Motorcars." *See Id.*

19.     The first Commercial Guaranty document for Loan 2 appears to be signed by Jason Standley in his personal capacity. *See Id.*

20.     Also like the first loan, the final two Commercial Guaranty documents for Loan 2 contain the forged signatures of Kenneth Standley. *See Id.*

21.     Jason Standley personally forged these signatures on the Commercial Guaranty documents for Loan 2 or otherwise directed another person or persons to forge the signatures.

**B.     Second Set of Forged Loan Documents (Renewal of Loans 1 & 2)**

22.     **Renewal of Loans 1 and 2.**  On or around April 24, 2020, it appears Jason Standley, on behalf of the Dealership, and BTH Bank entered into agreements to renew Loans 1 and 2. Documents related to the renewal of Loan 1 for an amount of $1.5 million dollars (the "Loan 1 Renewal") are attached hereto as **Exhibit E**.   Documents related to the renewal of Loan 2 for an amount of $8.5 million dollars (the "Loan 2 Renewal") are attached hereto as **Exhibit F**.

23.     Like the original loan documents, the purported commercial guaranties for the loan renewals contain the forged signatures of the Parties.

24.     Jason Standley again, personally forged these signatures on the Commercial Guaranty documents for the Loan 1 Renewal and Loan 2 Renewal or otherwise directed another person or persons to forge the signatures.

**C.     Third Set of Forged Loan Documents (Loan 3).**

25.     **Loan 3.**  On November 10, 2020, Jason Standley, on behalf of the Dealership, entered into a third loan ("Loan 3") with BTH Bank in the amount of five-hundred thousand dollars.  Loan 3 was documented similarly to the prior loan agreements.  The documents related to Loan 3 are attached hereto as **Exhibit G**.

26.     As with the previous loans, the purported commercial guaranties for Loan 3 contain the forged signatures of the Parties.

27.     Jason Standley personally forged these signatures on the Commercial Guaranty documents for Loan 3 or otherwise directed another person or persons to forge the signatures.

28.     At no point in time did Jason Standley have permission to forge the signature of Kenneth Standley, yet he did so on 3 separate occasions. Kenneth Standley only became aware of the issue when he received a notice from BTH Bank regarding a default on Loan 3. At this point, Kenneth Standley sent a text message to Jason Standley inquiring why he was getting notices. Jason Standley responded "You can trash it. It's being computer generated. I'll remind Jim again to have it corrected", attached here to as **Exhibit K.**

### D.      State Court Litigation

29.     On June 28, 2021, BTH filed a lawsuit in the 380th District Court of Collin County, identified as Cause No. 380-03430-2021 ("State Court Lawsuit"), against Paul Noonan, in his capacity as co-trustee of the Jason Standley Trust ("Noonan"), Paul Pogue in his capacity as co-trustee of the Jason Standley Trust ("Pogue") and Kenneth Standley, attached hereto as **Exhibit H**.

30.     On August 19, 2021, Kenneth Standley filed his original answer to the State Court Lawsuit.

31.    On September 9, 2021, Kenneth Standley filed his Original Counter-Claim and Third-Party Petition ("Counter Claim") asserting causes of actions against BTH Bank and also adding Jason Standley as a Third-Party Defendant to the State Court Lawsuit, attached hereto as **Exhibit I.**

32.    The State Court was progressing as discovery between all parties had started and depositions of BTH Bank's Corporate Representative had been conducted, as well as Kenneth Standley's deposition. A scheduled deposition for Jason Standley was scheduled for June 3, 2022 at 9:00am. However, on June 2, 2022, Jason Standley filed for bankruptcy and the deposition was unable to be conducted. As a result of the bankruptcy filing, the State Court Lawsuit was abated due to the automatic stay.

### E.    Bankruptcy Proceeding

33.    On June 2, 2022, Jason Standley and Shannon Davina Standley (the "Debtors") filed a Chapter 7 Bankruptcy Petition in this court, identified as case number 22-40689 ("Petition Date").

34.    On June 16, 2022, Jason Standley filed his Schedules, Statement of Financial Affairs and the Chapter 7 Statement of Current Monthly Income ("Original Schedules") which are attached hereto as **Exhibit J** (also filed as Docket No.15 in the underlying bankruptcy case).

35.    The Debtors 341 Meeting of Creditors was scheduled for July 8, 2022 ("First 341 Meeting") and Mark Weisbart was assigned as the bankruptcy trustee.

36.    Kenneth Standley through the undersigned counsel, attended the 341 Meeting of Creditors and was able to ask questions to the Debtors on the record. The Bankruptcy Trustee adjourned the meeting to September 16, 2022 at 11:30 a.m.

37.    The Debtors Originals Schedules are filled with numerous errors, misrepresentations and non-disclosures.

38.    On Schedule A, the Debtors listed an ownership interest in real estate located at 11600 Ranch Road (the "Property") with a value of $1,254.849.00. This valuation comes from the 2021 Rockwall County Appraisal District. However, Rockwall County Appraisal District is showing that the 2022 value of the Property is $1,803,345.00, a difference of approximately $548,000. Moreover, the Debtor failed to disclose that he purchased an adjacent lot to the Property on December 21, 2020 which showed a tax appraised value of $199,742.00. This purchase was never disclosed in the Debtors schedules or statement of financial affairs.

39.    On Schedule B, the Debtors listed owners of 2 horses with a value of $10,000.00. The horses were purchased by PM Standley Corporation for $65,000 on June 1, 2020. The Debtors failed to disclose the $65,000 as income and further failed to assign an accurate value of the Horses.

40.    The Debtors also listed wedding rings and jewelry valuing $300 but on information and belief, the Debtors own jewelry far in excess of $300, including diamond rings and high-end watches.

41.    On Schedule B, the Debtors valued their household goods and furnishings at $8,200.00, however, on information and belief, the Debtors furnished their entire home and connected guest house with furniture from Macy's that was being paid through the Debtor's Dealership, totaling over $75,000.

42.    The Debtors value of assets as listed on their Schedules is replete with errors and grossly undervalue the Debtors assets.

43.    On the Statement of Financial affairs, the Debtors answered Question 4, which asks about income earned as follows:

*Plaintiff's Original Complaint*                                        Page **8** of **19**

    a.   The Debtors earned $0.00 in 2022.

    b.   The Debtor earned $25,000 in 2021.

    c.   The Debtors earned $501,617.00 in 2020.

**44.**    The Debtors testified at the First 341 Meeting that their son Preston Standley had been supporting them in 2022 and paying all of their living expenses, however, the Debtors failed to include the gift income on their Statement of Financial Affairs. The Debtors Schedule J listed a total of $14,241.84 in monthly expenses, which would total $242,111.28 to cover the Debtors expenses from January 1, 2021 through May 31, 2022 (right before the petition). Yet, the Debtors list income for that same time period as $25,000.

**45.**    Furthermore, based on information and belief, the Debtors made large gifts and transfers to their son Preston Standley while he was an employee of the Dealership in order to hide assets. Debtors disclosed a single gift made to Preston Standley on October 2, 2020 in the amount of $17,500.

**46.**    In addition, the Debtors' son Preston Standley paid attorney fees on behalf of the Debtors as listed in the Statement of Financial Affairs Question 17 in the amount of $60,000.00 to Burke Bogdanowicz and $15,519.50 to Orenstein Law Group PC, totaling $75,519.50. During this same time that Preston Standley was allegedly paying the attorney fees for the Debtors, the Debtors disclosed that they gifted their son Preston Standley $17,500 just 2 months prior to Preston Standley receiving a gift from his parents.

**47.**    On information and belief, the Debtors attempted to hide assets and income by transferring it to Preston Standley, who then began supporting virtually 100% of the Debtors expenses from January 1, 2021 through the present date. Based on the Debtors schedules and disclosures, Preston Standley has gifted over $317,630.78 to the Debtors in 16 month period.

48.    The Debtor Jason Standley made transfers directly from the Dealership to his personal accounts totaling **$11,805,354.73** in 2020.  In addition, between August 1, 2020 through December 31, 2020 (a four month time-frame), a total of **$11,376.906.72** was transferred from the Dealership directly to Jason Standley individually. This does not include a wire transfer from the dealership to Jason Standley in the amount of **$811,000.00** which occurred on January 14, 2021. In less than 13 months, Jason Standley transferred to his personal bank account over **$12,616,354.73.** However, the Debtors have failed to disclose any of this as income on their Statement of Financial Affairs and on their 2020 Tax Return. F

49.    Furthermore, the Debtors routinely used the Dealership bank accounts as their personal piggy bank. They would routinely use the Dealership funds to pay for personal expenses such as: mortgage payments, improvements to their home, horses, furniture for their home under the guise that they were "loans" that were always paid back. However, there are no promissory notes or other indications that these were loans and the Debtors failed to include these transactions as income on their tax return filings and on their Original Schedules.

50.    On the Statement of Financial Affairs, Question 18 asked about any prior transfers. The Debtors stated that they had transferred $10,796,247.75 to PM Standley Corporation between August 1, 2020 through December 23, 2020. The Debtors also listed that they had transferred money from PM Standley directly to Jason Standley a total of $10,784,541.96 from August 1, 2020 through January 10, 2021. In effect, the Debtors are making it seem as if any money they transferred to themselves went right back to the Dealership.

51.    When asked at the 341 meeting how the Debtors had so much cash to loan to the Dealership, despite only reporting income of $501,617.00, the Debtors were unable to provide an explanation.

52.     The Debtors included an itemized list purporting to show the transfers, identified

in the above paragraph, attached hereto as **Exhibit J** Pages 44-48. The Debtors failed to disclose

numerous transfers that were made by PM Standley Corporation (which he solely controlled and

operated) to Jason Standley. The non-disclosed transfers total $1,644,648.28 that the Debtors

received and were not disclosed in their Statement of Financial Affairs and are further illustrated

below.

| Date: | Check #: | Amount |
|---|---|---|
| 1/2/2020 | 806054 | $58,000.00 |
| 1/2/2020 | 806055 | $47,000.00 |
| 1/16/2020 | 806444 | $56,500.00 |
| 1/16/2020 | 806446 | $57,300.00 |
| 1/16/2020 | 806447 | $61,200.00 |
| 1/16/2020 | 806448 | $57,500.00 |
| 1/28/2020 | 806724 | $10,000.00 |
| 3/4/2020 | 807823 | $38,952.00 |
| 3/4/2020 | 807824 | $28,764.00 |
| 3/4/2020 | 807825 | $24,812.00 |
| 3/4/2020 | 807826 | $19,983.00 |
| 3/4/2020 | 807827 | $23,489.00 |
| 3/10/2020 | 808044 | $30,000.00 |
| 3/18/2020 | wire | $10,000.00 |
| 4/15/2020 | wire | $20,000.00 |
| 5/6/2020 | 809088 | $20,000.00 |
| 5/6/2020 | 809089 | $23,000.00 |
| 5/6/2020 | 809090 | $27,000.00 |
| 5/7/2020 | wire | $99,000.00 |
| 5/21/2020 | wire | $5,000.00 |
| 8/5/2020 | wire | $20,000.00 |
| 9/9/2020 | wire | $20,000.00 |
| 9/30/2020 | 814558 | $3,498.19 |
| 10/31/2020 | 814557 | $2,800.00 |
| 11/10/2020 | 814556 | $1,400.00 |
| 11/16/2020 | 814673 | $60,000.00 |
| 11/25/2020 | 814959 | $8,450.09 |
| 12/23/2020 | 815470 | $588,000.00 |
| 12/24/2020 | 815540 | $223,000.00 |
| | | $1,644,648.28 |

53.     The Debtors have failed to explain what happened to the over 12 million dollars they received from January 1, 2020 through January 8, 2021 and have failed to record any of that as income on their Statement of Financial Affairs and on their 2020 Tax Return.

54.     On information and belief, the Debtors had a Frost Bank Account with an account number ending in 7357 and failed to disclose this bank account anywhere in their schedules. In addition, many of the transfers made from the Dealership to Jason Standley were deposited into this Frost bank account, which now apparently no longer exists

55.     The shear volume of misrepresentations and non-disclosures in the Debtors' Bankruptcy Filing establishes that the Debtors are committing bankruptcy fraud.

56.     This in conjunction with the Debtor Jason Standley's forgery of written instruments to obtain loans for the Dealership exceeding 10.5 million dollars establishes that the Debtors did not file their Chapter 7 Bankruptcy in good-faith.

## CAUSES OF ACTION

### COUNT 1: 11 U.S.C. § 523(a)(2)(A)

57.     11 U.S.C. § 523(a)(2)(A) "does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

58.     This statute states that a debt is not discharged to the extent it is made by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's financial condition." 11 U.S.C. § 523(a)(2)(A). To prove the §523(a)(2)(A) claim in the case, the Creditor must show (1) the debtor made the representations; (2) at the time the representations were made the debtor knew they were false; (3) the debtor made the representations with the

intention and purpose to deceive the creditor; (4) the creditor relied on the representation; and (5)

the creditor sustained losses as a proximate result of the representations. *Nev. Prop. 1 LLC v.*

*D'Amico (In re D'Amico)* , Nos. 12-38036, 13-03041, 13-03042, 2013 Bankr. LEXIS 4815 (Bankr.

S.D. Tex. 2013).

59.     Jason Standley made false representations to BTH by signing Kenneth's name onto

the loan documents when Kenneth did not approve this. Jason knew this representation was false

because Kenneth had told him multiple times that Kenneth was not going to sign onto the loan and

Jason needed to sign the loan himself. Jason made these representations with the intention and

purpose to deceive BTH because BTH gave Jason the loan based on the documents with Kenneth's

forged signature. BTH relied on this representation because BTH granted the loan after Jason

forged Kenneth's signature as a guarantor, which shows BTH relied on the representations. BTH

and Kenneth have both sustained losses as a proximate result of the representations because Jason

has now filed bankruptcy and is attempting to get the debt discharged.

60.     Based on these facts, the elements of § 523(a)(2)(A) are met. As a result, the debt

should not be discharged based on this statute.

### COUNT 2: 11 U.S.C. § 523(a)(2)(B)

61.     11 U.S.C. § 523(a)(2)(B) "does not discharge an individual debtor from any debt

for money, property, services, or an extension, renewal, or refinancing of credit, to the extent

obtained by use of a statement in writing that is materially false; respecting the debtor's or an

insider's financial condition; on which the creditor to whom the debtor is liable for such money,

property, services, or credit reasonably relied; and that the debtor caused to be made or published

with intent to deceive."

**62.** This statute states that a debtor is not discharged from a debt for money when the debt is obtained by use of a written statement that (1) is materially false; (2) respecting the debtor's or an insider's financial condition; (3) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (4) that the debtor caused to be made or published with intent to deceive. 11 U.S.C. § 523(a)(2)B).

**63.** Jason Standley obtained the debt by use of a written statement that is materially false. The written statement is the loan documents and the documents are materially false because Jason forged Kenneth's signature. The statement was respecting the financial condition of Jason because it was for a loan document showing that Kenneth would be a guarantor for the loan, which was materially false. Jason is liable to BTH for this debt and BTH reasonably relied on the statement that Jason had Kenneth as a guarantor when BTH received the loan documents. Jason had an intent to deceive BTH because Jason knew that Kenneth said he was not going to be a guarantor for the loan, and Jason proceeded to forge Kenneth's signature and obtain the loan anway. Jason forged Kenneth's signature with the intent to deceive BTH into giving Jason the loan with a guarantor.

**64.** All of the elements for a § 523(a)(2)(B) claim are met. As a result, the debt should not be dischargeable based on these facts under this statute.

### COUNT 3: 11 U.S.C. § 523(a)(4)

**65.** 11 U.S.C. § 523(a)(4) "does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." This bar to discharge reaches debts incurred through abuses of fiduciary positions involving debts arising from the debtor's acquisition or use of property that is not the debtor's. The party promoting the discharge exception must prove by a preponderance of the evidence that the debt is not dischargeable.

*Harrison v. Reiner*, 607 S.W.3d 450 (Tex. App.—Houston [14th Dist.] 2020). Under this section, the party seeking to create an exception to discharge must show the elements of either fraud, defalcation, embezzlement, or larceny. For fraud and defalcation, there must also be a showing that the debtor was acting in a fiduciary capacity.

66.    Common-law fraud includes both actual and constructive fraud. *Cotten v. Weatherford Bancshares, Inc*., 187 S.W.3d 687, 702 (Tex. App.—Fort Worth 2006, pet. denied). "A plaintiff seeking to prevail on a claim of actual fraud must prove that (1) the defendant made a material misrepresentation; (2) the defendant knew the representation was false or made the representation recklessly without any knowledge of its truth; (3) the defendant made the representation with the intent that the other party would act on that representation or intended to induce the party's reliance on the representation; and (4) the plaintiff suffered an injury by actively and justifiably relying on that representation." *Exxon Corp. v. Emerald Oil & Gas Co., L.C*., 348 S.W.3d 194, 217 (Tex. 2011). However, constructive fraud is "the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests." *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1964). "Evidence supporting a breach of fiduciary duty may, in appropriate circumstances, support a constructive-fraud finding." *Murphy v. Am. Rice, Inc*., No. 01-03-01357-CV, 2007 Tex. App. LEXIS 2031, 2007 WL 766016, at *10 (Tex. App.—Houston [1st Dist.] Mar. 9, 2007, no pet.); *accord Flanary v. Mills*, 150 S.W.3d 785, 795  (Tex. App.—Austin 2004, pet. denied).

67.    The elements of actual fraud are met because Jason made a material representation by forging Kenneth's signature on the loan documents; Jason knew the representation was false because Kenneth told Jason he would not sign on as a guarantor; Jason forged Kenneth's signature

with the intent that BTH would act on this by granting the loan; and an injury resulted from this representation because BTH is attempting to wrongfully receive payment from Kenneth. The elements of constructive fraud can also be met. As the sole board member and sole officer for PM Standley Corp., Jason had a fiduciary duty. By forging Kenneth's signature, Jason breached this duty, which the law declares fraudulent because of the tendency of forgery to deceive others. Since actual fraud and constructive fraud can both be shown, the requirements of § 523(a)(4) can be met to create an exception to the discharge.

68.     The Fifth Circuit has defined defalcation, as relevant to the context of a discharge in bankruptcy, as a "willful neglect of fiduciary duty," which need not be accompanied by fraud or embezzlement. *In re Schwager*, 121 F.3d 177, 184-85 (5th Cir. 1997); *see also Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754, 1758-59, 185 L. Ed. 2d 922 (2013) (in the course of holding that "defalcation" as used in 11 U.S.C. § 523(a)(4) requires an intentional wrong, generally observing broad disagreement among legal authorities about the meaning of "defalcation"); *Balusik v. Kollatschny*, No. 01-99-01342-CV, 2002 Tex. App. LEXIS 2810, 2002 WL 1822360, at *4 (Tex. App.—Houston [1st Dist.] Aug. 18, 2002, no pet.) (not designated for publication) ("Defalcation is also defined as '[l]oosely, the failure to meet an obligation; a nonfraudulent default.'"). Defalcation can also be established because, as the sole board member and sole officer for PM Standley Corp., Jason had a fiduciary duty. Jason willfully neglected this fiduciary duty by forging a signature on a loan in order to have a guarantor on the loan to get the loan for the company. The elements of defalcation can also be met to satisfy the requirements of § 523(a)(4) to create an exception to the discharge.

69.     Embezzlement requires proof that (1) the defendant was the agent of the person or corporation alleged to have been harmed and was charged with the duty of receiving money of his

principal; (2) he received money belonging to his principal in the course of his employment; and (3) that he embezzled, misapplied, or converted it to his own use. *Fellers v. State*, 138 Tex. Crim. 307, 308, 136 S.W.2d 217, 218 (Tex. Crim. App. 1940); *see* Tex. Penal Code Ann. § 32.45 (West 2011) (misapplication of fiduciary property or property of financial institution). The elements for embezzlement cannot be met under these facts. However, that does not matter because it is only an option under this section, not a requirement.

70.     Since the elements of fraud (both actual and constructive) and the elements of defalcation can be met, there are two separate avenues that can be argued to meet the requirements of § 523(a)(4). Both fraud and defalcation do not need to be met in order to have the debt excepted from discharge, but it definitely helps that we can argue both. As a result, the debt should be excepted from discharge under this section.

### COUNT 4: 11 U.S.C. § 523(a)(6)

71.     11 U.S.C. § 523(a)(6) "does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity."

72.     There is no statutory definition for willful and malicious, rather it has been defined by case law. An injury under 11 U.S.C. § 523(a)(6) is willful and malicious where there is either an objective substantial certainty of harm or a subjective motive to cause harm. *Nev. Prop. 1 LLC v. D'Amico (In re D'Amico)*, 509 B.R. 550 (S.D. Tex. 2014). For a debt to be nondischargeable under § 523(a)(6), a debtor must have acted with objective substantial certainty or subjective motive to inflict injury. *Id.* Because debtors generally deny that they had a subjective motive to cause harm, most cases that hold debts to be nondischargeable do so by determining whether the debtor's actions were at least substantially certain to result in injury. *Id.*

73.     Jason's actions were substantially certain to result in injury. Jason forged Kenneth's signature after Kenneth told Jason multiple times, including in front of two witnesses, that he would not sign as a guarantor for the loan. Jason forged Kenneth's signature after Kenneth's refusal to sign. This forgery is substantially certain to result in injury.

74.     The substantial certainty is up to the decision of the judge. However, based on the facts here and the act of forgery, it is reasonable to conclude that Jason's actions were substantially certain to result in injury. As a result, the requirements of § 523(a)(6) can be met and the debt can be excepted from discharge.

### COUNT 5: 11 U.S.C. § 727(a)(4)(A)

75.     11 U.S.C. § 727(a)(4)(A) "the court shall grant the debtor a discharge, unless the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account." Under 11 U.S.C.S. § 727(a)(4)(A), the plaintiff in a bankruptcy proceeding must show that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *Mandel v. White Nile Software, Inc. (In re Mandel)*, Nos. 20-40026, 20-40340, 2021 U.S. App. LEXIS 24489 (5th Cir. 2021). The purpose of § 727(a)(4)(A) is to enforce a debtor's duty of disclosure and to ensure that the debtor provides reliable information to those who have an interest in the administration of the estate. *Id.* A plaintiff asserting a § 727(a)(4)(A) discharge exception bears the burden of demonstrating an actual intent to hinder, delay or defraud creditors. *Id.* Circumstantial evidence may be used to prove fraudulent intent, and the cumulative effect of false statements may, when taken together, evidence a reckless disregard for the truth sufficient to support a finding of fraudulent intent. *Id*

76.    The Debtors have knowingly and fraudulently made multiple false oaths and failed to properly disclose their assets, liabilities and other financial information on their bankruptcy schedules.

## REQUEST FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that the Court enter a judgment in favor of Plaintiff, find that the debts alleged by Plaintiff are non-dischargeable in this bankruptcy proceeding, find the Debtors are not entitled to a discharge under Chapter 7 Title 11 of the United States Bankruptcy Code and for such further relief as to which Plaintiff may be entitled.

Dated: September 5, 2022

Respectfully Submitted,

/s/ C. Daniel Herrin
C. Daniel Herrin
State Bar No. 24065409
HERRIN LAW, PLLC
4925 Greenville, Suite 455
Dallas, TX 75206
Tel. (469) 607-8551
Fax (214) 722-0271

ATTORNEYS FOR THE PLAINTIFF