## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 7 |
| | § | |
| **JASON TROY STANDLEY and** | § | |
| **SHANNON DAVINA STANDLEY** | § | **Case No. 22-40689-BTR** |
| | § | |
| Debtors | § | |
| | § | |

## JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT
## PURSUANT TO BANKRUPTCY RULE 9019

### 21-DAY NEGATIVE NOTICE – LBR 9007(a)

YOUR RIGHTS MAY BE AFFECTED BY THE RELIEF SOUGHT IN THIS PLEADING. YOU SHOULD READ THIS PLEADING CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY, IF YOU HAVE ONE IN THIS BANKRUPTCY CASE. IF YOU OPPOSE THE RELIEF SOUGHT BY THIS PLEADING, YOU <u>MUST</u> FILE A WRITTEN OBJECTION, EXPLAINING THE FACTUAL AND/OR LEGAL BASIS FOR OPPOSING THE RELIEF.

NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING ***WITHIN TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE*** SHOWN IN THE CERTIFICATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION. IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT. IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING WITH APPROPRIATE NOTICE. IF YOU FAIL TO APPEAR AT THE HEARING, YOUR OBJECTION MAY BE STRICKEN. THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.

COMES NOW Shannon Davina Standley and Jason Troy Standley ("Debtors") and Mark A. Weisbart, the Chapter 7 Trustee ("Trustee"), by and through their respective counsel of record (jointly the "Parties"), and file this their *Joint Motion to Approve Settlement Agreement Pursuant to Bankruptcy Rule 9019* ("Motion") and respectfully state as follows:

### I. JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Motions to approve settlements involving the bankruptcy estate are core proceedings pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. Background

2.      On June 2, 2022 ("Petition Date"), Debtors filed their voluntary petition, initiating the captioned Chapter 7 bankruptcy case [Dkt. No. 1].

3.      On June 2, 2022, Mark A. Weisbart was appointed the Chapter 7 Trustee in the captioned bankruptcy case.

4.      On June 16, 2022, Debtors filed their Schedules and Statement of Financial Affairs [Dkt. No. 15] ("Original Schedules"). In their Original Schedules, the Debtors claimed a homestead exemption under Texas law for the home they reside in at 11600 Ranch Road, Copper Canyon, Denton County, Texas ("Homestead").

5.      On October 21, 2022, the Trustee concluded the 341 Meeting of Creditors in the Bankruptcy Case.

6.      On November 9, 2022, Debtors filed their Amended Schedules ("Amended Schedules") without amending or otherwise modifying or affecting their homestead exemptions claimed in the Schedules (Amended Schedules together with the Original Schedules hereafter the "Schedules").

7.      The deadline for the any party to file any objection to the Debtors' exemptions claims, including the Homestead exemption was November 20, 2022 ("Exemption Objection Deadline").

8.      On September 21, 2022, this Court set November 11, 2022 ("Claims Bar Date") as the bar date for nongovernmental claims to be filed in the Bankruptcy Case.

9.      On November 19, 2022, the Trustee filed his Objection to Homestead and Other Claimed Exemptions [Dkt. No. 49] ("Objection").

10.     No other party filed any objection to the Debtors claimed exemptions by the Exemption Objection Deadline although the Debtors have by agreement extended such deadline

solely for Origin Bank, the successor in interest to BTH National Bank (*See* e.g., Dkt. Nos. 54, 91) ("Origin").

11.      Two dischargeability complaints have been filed against Debtor Jason Standley and one discharge complaint has been filed against both Debtors.  BTH National Bank ("BTH") filed a dischargeability complaint solely against Debtor Jason Standley. Kenneth Standley, Jason Standley's father, filed both a dischargeability and a discharge complaint against both Debtors.

12.      The Debtors have answered both complaints.

13.      As to the dischargeability complaint filed by Kenneth Standley against Debtor Shannon Standley, such dischargeability complaint has been dismissed with prejudice.   There remains the dischargeability complaint against Jason Standley and the discharge complaint against both Debtors.

14.      In addition, prior to the Petition Date, on August 12, 2021, BTH recorded that certain Notice of Lis Pendens in Denton County, Instrument No. 146317, covering the Debtors' claimed Homestead in this Bankruptcy Case.

15.       On December 10, 2022, the Debtors responded to the Trustee's Objection [Dkt. No. 65], opposing the Trustee's allegations.

16.      Discovery relating to the Trustee's Objection has been taking place, both formally and informally.

17.      Sufficient discovery having been conducted with respect to the Trustee's Objection, the Debtors have earnestly engaged in settlement discussions with the Trustee.

18.      As of January 18, 2023, the only creditors who filed claims, other than Kenneth Standley and BTH (now Origin) are 3 other creditors.  The amount of creditor claims which were either filed or listed as undisputed in the Schedules, not including Kenneth Standley and Origin, total approximately $50,000.00.

19.     The Debtors strongly believe that they will defeat any attempt to have their Homestead and other exemptions' claims denied and are prepared to proceed to defend such claims.

20.     The Trustee likewise believes he would prevail at trial of his Objection.

21.     The Parties have determined, however, that additional discovery and trial of the Objection will far exceed the amount of the filed, undisputed and enforceable claims in the Bankruptcy Case.

22.     The dischargeability and discharge complaints are not only factually and legally complicated but will require extensive discovery (initially apparently there exist more than 125 boxes of material to sort through and attempts to locate witnesses who have now dispersed and whose location is not known), expert and fact witness testimony, and significant documentary and digital evidence discovery is required.  The estimate of attorneys' fees to prosecute and defend the dischargeability and discharge complaints could exceed hundreds of thousands of dollars for each side.

23.     Without any Party conceding their positions, and solely to avoid the cost and expense of litigation and to avoid the risk for the Parties, the Parties now request the Court to approve the settlement set forth below.

### III. The Settlement

24.     The Trustee and the Debtors desire to resolve all underlying controversies outlined above, including but not limited to the Objection pursuant to the Trustee Settlement Agreement attached as Exhibit "A" and incorporated by reference herein for all relevant purposes ("Settlement Agreement").

25.     In summary, the Settlement Agreement provides for the Debtors to sell their claimed Homestead and from the proceeds of such sale to pay the Trustee, on behalf of the

bankruptcy estate, the total sum of $25,000.00. In exchange for such payment, mutual releases will be exchanged between the Trustee, on behalf of the bankruptcy estate, and the Debtors for any and all claims between them, whether known or unknown.

## IV. ARGUMENT AND AUTHORITY

### A. Standard Under Bankruptcy Rule 9019

26.     Under Bankruptcy Rule 9019(a), the Court has discretionary authority to approve a compromise or settlement. *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.),* 68 F.3d 914, 917 (5th Cir. 1995); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). Bankruptcy settlements "are a normal part of the process of reorganization" and are "desirable and wise methods of bringing to a close proceedings otherwise lengthy, complicated and costly." *Rivercity v. Herpel (In re Jackson Brewing Co.),* 624 F.2d 599, 602 (5th Cir. 1980) (quoting *Case v. Los Angeles Lumber Prods. Co.,* 308 U.S. 106, 130 (1939)).

27.     Bankruptcy Rule 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." *See* Fed. R. Bankr. P. 9019(a). The Fifth Circuit has established the following factors to consider in determining whether approval is warranted:

(a)     the probability of success in litigation, with due consideration for the uncertainty in fact and law;

(b)     the complexity and likely duration of litigation and any attendant expenses, inconvenience and delay;

(c)     the proportion of creditors who do not object to, or who affirmatively support the proposed settlement; and

(d)     the extent to which the settlement is truly the product of arms' length bargaining and not the product of fraud or collusion.

*See Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop. Inc. (In re Cajun Elec. Power Coop. Inc.)*, 119 F.3d 349, 356 (5th Cir. 1997); *In re Foster Mortg. Corp.*, 68 F.3d at 918 (requiring the lower courts to consider whether creditors were involved in negotiations and support the proposed settlement); *In re Jackson Brewing,* 624 F.2d at 602.

28.     In considering "all other factors," the Fifth Circuit has further explained that courts should consider the best interest of creditors, "with proper deference to their reasonable views," and consider the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion. *See In re Cajun Elec. Power Coop. Inc.*, 119 F.3d at 356.

**B. Application to the Settlement Agreement**

29.      The Parties each believe in the merits of their respective positions in the controversies set forth above. The Debtors are prepared to litigate the various controversies which may each impact the Objection. By settling these matters, the Debtors may use funds from their claimed Homestead to obtain a sure result in a much shorter period of time. Time, cost, expense and uncertainty is attendant to both Parties.

30.     While the Trustee's Objection timeline is not exceptionally long, the cost of completing discovery and trying the Objection and any recoveries realized by the Trustee and the Debtor's bankruptcy estate could possibly exceed the filed, undisputed and enforceable amount of claims in the Bankruptcy Case. Extensive damage to the Homestead during Storm Uri in February 2021 and additional hail damage sustained in April 2022 both potentially uninsured or underinsured damages, have substantially reduced the value of the Homestead even if the Trustee's objections to Debtors' exemption claims were successful.

31.     The settlement proposed, in addition to sums the Trustee has already received from the Bankruptcy Case, allows for a material distribution to unsecured creditors who have not filed dischargeability or discharge complaints.

32.     Other than Origin, the only other large claim in the case is the one by Kenneth Standley.  Kenneth Standley is seeking to not only bar the dischargeability of his own claims, but he is also seeking to bar the Debtors discharge in toto.  If Kenneth Standley were to prevail in his complaint, the proposed settlement would mean nothing to him as he would be free to continue to exercise any state law remedies available to him.  If he does not prevail, any objection Kenneth Standley may now try to lodge is barred. *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S. Ct. 1644 (1992) (deadline for objection or extension is absolute; claimed exemption will be allowed despite its lack of basis); Rule 4003(b).

33.     As to Origin's dischargeability complaint, Origin and the Debtors continue to negotiate a settlement of their disputes.  However, Debtors are also confident that they will prevail as to any objection by Origin to Debtor's exemption claims as well as relating to any dischargeability complaint.  Moreover, should Origin prevail in its dischargeability complaint against Jason Standley, it would be of no moment to Origin as it too would be free to continue to exercise any state law remedies available to it.

34.     The Parties have been represented by highly competent counsel, and the Settlement Agreement is the result of good faith, arms' length negotiations between the Parties. The Settlement Agreement represents a reasonable result for the Debtors' estate.

For the foregoing reasons, the Debtors and Trustee request that the Court grant the Motion, approve the Settlement Agreement, and grant such other and further relief to which the Debtors and the Trustee may be justly entitled.

Date: June 22, 2023

Respectfully Submitted,

*/s/ John P. Lewis, Jr.*

John P. Lewis, Jr.
Texas Bar No. 12294400
HAYWARD PLLC
10501 N Central Expy, Suite 106
Dallas, TX 75231
(972) 755-7106 Phone/Fax

COUNSEL FOR MARK A. WEISBART,
CHAPTER 7 TRUSTEE

*/s/ Rosa R. Orenstein*

Rosa R. Orenstein
Texas Bar No. 17153200
Nathan M. Nichols
Texas Bar No. 24060336
ORENSTEIN LAW GROUP, P.C.
P.O. Box 382538
711 S. Cedar Ridge Dr.
Duncanville, TX 75138
214-757-9101 Phone
972-764-8110 Fax

COUNSEL FOR DEBTORS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing instrument was served on the parties listed on the attached mailing matrix either through the Court's electronic notification system as permitted by Appendix 5005 to the Local Rules of the U.S. Bankruptcy Court for the Eastern District of Texas, or by first class United States Mail, postage prepaid no later than June 23, 2023.

*/s/ John P. Lewis, Jr.*
John P. Lewis, Jr.

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

### RECITALS

THIS SETTLEMENT AGREEMENT AND MUTUAL RELEASE (the "Settlement Agreement") is made effective as of June 21, 2023, among Debtors, Shannon Davina Standley and Jason Troy Standley ("Debtors"), and Mark A. Weisbart, solely in his capacity as the Chapter 7 Trustee in the Debtor's Bankruptcy Case (defined below) and the Debtor's Bankruptcy Estate (defined below) and their respective, as applicable, heirs, estates, successors in interest and/or assigns, attorneys, and agents. For convenience, the foregoing persons may each be referred to individually as a "Party" and collectively as the "Parties."

WHEREAS, on June 2, 2022 ("Petition Date"), Debtors filed their voluntary joint petition, initiating a Chapter 7 bankruptcy case [Dkt. No. 1] in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division ("Bankruptcy Court") as Bankruptcy Case No. 22-40689-BTR ("Bankruptcy Case");

WHEREAS, on June 2, 2022, Mark A. Weisbart was appointed the Chapter 7 Trustee in the Bankruptcy Case (in his capacity as Trustee for the estate created in the Bankruptcy Case, "Trustee");

WHEREAS, on June 16, 2022, Debtors filed their original Bankruptcy Schedules and Statement of Financial Affairs [Dkt. No. 15] ("Original Schedules"). In their Original Schedules, Debtors claimed a homestead exemption under Texas law for the home they reside in at 11600 Ranch Road, Copper Canyon, Denton County, Texas ("Homestead"). On November 9, 2022, Debtors filed their Amended Schedules ("Amended Schedules") without amending or otherwise modifying or affecting their Homestead exemption claim in the Original Schedules (hereafter the Original Schedules and the Amended Schedules collectively called the "Schedules");

Exhibit "A"

WHEREAS, On September 21, 2022, this Court set November 11, 2022 ("Bar Date") as the bar date for claims to be filed by nongovernmental claimants in the Bankruptcy Case;

WHEREAS, on November 19, 2022, the Trustee filed his Objection to Homestead and Other Claimed Exemptions ("Objection");

WHEREAS, since the filing of the Objection, the Parties have been conducting discovery and exploring their respective factual and legal positions and concurrently therewith exploring settlement of the Objection;

WHEREAS, the Parties desire to resolve any and all claims by and among the Debtors, on the one hand, and the Trustee, on behalf of the estate created by the Bankruptcy Case ("Bankruptcy Estate"), on the other hand, including, without limitation, the Objection and all their present and potential disputes (collectively, the "Claims"); and

WHEREAS, the Trustee, the Bankruptcy Estate and the Debtors believe that the terms and conditions of this Settlement Agreement are fair and reasonable as to all Parties and are in the best interests of the Bankruptcy Estate.

NOW THEREFORE, in consideration of the promises and mutual covenants, benefits and detriments contained herein, intending to be legally bound, the Parties do hereby agree as follows:

1. <u>Effective Date of Settlement Agreement</u>. This Settlement Agreement will become effective and binding upon the satisfaction of the following conditions precedent: (i) the Settlement Agreement is executed by all Parties and each Party hereto shall have delivered to the other Party an executed counterpart of its signature page to this Settlement Agreement; and (ii) entry of a Final Order (as that term is defined herein) by the Bankruptcy Court approving this Settlement

Exhibit "A"

Agreement (the "Bankruptcy Court Approval"). The date by which all of the foregoing conditions

have been satisfied or waived shall be referred to herein as the "Settlement Date."

2.   <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties

hereby acknowledge and agree that the rights and obligations set forth in this Settlement

Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

3.   <u>Settlement Terms.</u>

    a.   The Debtors will pay the Trustee the sum of $25,000.00 (hereafter the "Settlement Amount"). This payment resolves all matters, questions or issues relating to the Debtors' Homestead, exemption claims and the Objection after which no claim whatsoever shall be made by the Trustee against the Debtors' claimed exemptions in the Schedules, including the Homestead exemption in any manner or forum;

    b.   Payment of the Settlement Amount shall be made upon the following 2 conditions having been met: (a) entry of a Final Order by the Bankruptcy Court approving this Settlement Agreement and (b) sale of the Debtors' claimed Homestead. Payment in full of the Settlement Amount shall be made directly from the proceeds of the sale of the Debtors' claimed Homestead at the closing of such sale by the closing officer;

    c.   Immediately upon the Bankruptcy Court authorizing the Debtors to sell their claimed Homestead, the Debtors shall sell the claimed Homestead.

    d.   At the closing of the sale of the claimed Homestead, the Trustee shall deliver any reasonably requested release of any claim against the claimed Homestead to the title company closing the sale of the claimed Homestead conditioned upon the Trustee's receipt of the Settlement Amount.

    e.   Unless extended in writing by the Trustee, the closing of the sale of the claimed Homestead and the remittance of the Settlement Amount to the Trustee must occur on or before 90 days following entry of an order by the Bankruptcy Court approving this Settlement Agreement and the settlement contemplated hereby. If such closing and remittance does not occur within such period (as it may be extended by the Parties), then this Settlement Agreement, the provisions hereof, and the releases contained herein shall be ineffective and null and void *ab initio* without further action or notice of any kind whatsoever.

**REPRESENTATIONS, WARRANTIES, MUTUAL WAIVERS AND RELEASES**

4.   <u>Representations and Warranties of The Debtors</u>. Each of the Debtors hereby represents and warrants to the Trustee that:

Exhibit "A"

(a) <u>Power and Enforceability</u>. Subject to the entry of the Final Order by the Bankruptcy Court approving this Settlement Agreement, the Debtors have all necessary power and authority to execute, deliver and perform their obligations under this Settlement Agreement. The execution, delivery and performance by the Debtors of this Settlement Agreement has been duly authorized by all necessary action on behalf of the Debtors. This Settlement Agreement has been duly executed and delivered on behalf of the Debtors and (assuming the due authorization, execution, and delivery by the Trustee) constitutes a legal, valid and binding obligation of the Debtors, enforceable against the Debtors in accordance with its terms.

(b) <u>Indirect Claims; No Conflicts; Laws and Consents</u>. Subject to the entry of the Final Order by the Bankruptcy Court approving this Settlement Agreement: as of the date of execution of this Settlement Agreement, the Debtors have not assigned, granted, or transferred any claims against the Bankruptcy Estate in any way to any Person that is not a Party hereto. No consent, waiver, approval, order, permit or authorization of, or declaration or filing with, or notification to, any Person or governmental authority is required on the part of the Debtors in connection with the execution and delivery of this Settlement Agreement or the performance of or compliance with any of the provisions hereof by the Debtors. Neither the execution, delivery or effectiveness of this Settlement Agreement nor the performance of or compliance with the terms and conditions hereof by the Debtors will conflict with, or result in any violation of or default (with or without notice or lapse of time, or both) under, or give rise to any increased, additional, accelerated or guaranteed rights or entitlements of any Person under (i) any law applicable to the Debtors or (ii) any agreement or document to which any of the Debtors is a party, except for any such conflict, violation, default, rights or entitlements that would not have a material adverse effect upon the Debtors' ability to perform their obligations under this Settlement Agreement and the obligation to pay prior lienholders' claims against the Homestead. No consent, waiver, approval, order, permit or authorization of, or declaration or filing with, or notification to, any Person or governmental authority, other than the Bankruptcy Court, is required on the part of the Debtors in connection with the execution and delivery of this Settlement Agreement or the performance of or compliance with any of the provisions hereof by the Debtors.

5.    <u>Representations and Warranties of the Trustee</u>. The Trustee hereby represents and warrants that:

(a) <u>Power and Enforceability</u>.  Subject to the approval of the Bankruptcy Court where the Bankruptcy Case is pending: the Trustee has all necessary power and authority to execute, deliver and perform his obligations under this Settlement Agreement on behalf of the Bankruptcy Estate, (ii) the execution, delivery and performance by the Trustee of this Settlement Agreement has been duly authorized by all necessary action on behalf of the Bankruptcy Estate and (iii) this Settlement Agreement has been duly executed and delivered on behalf of the Trustee and (assuming the due authorization, execution and delivery by the Debtors) constitutes a legal, valid and binding obligation of the

Trustee, enforceable against the Trustee on behalf of the Bankruptcy Estate in accordance with its terms.

<u>Indirect Claims; No Conflicts; Laws and Consents</u>. Subject to the entry of the Final Order by the Bankruptcy Court approving this Settlement Agreement: as of the date of execution of this Settlement Agreement, the Trustee has not assigned, granted, or transferred any claims against the Debtors in any way to any Person that is not a Party hereto. No consent, waiver, approval, order, permit or authorization of, or declaration or filing with, or notification to, any Person or governmental authority is required on the part of the Trustee in connection with the execution and delivery of this Settlement Agreement or the performance of or compliance with any of the provisions hereof by the Trustee. Neither the execution, delivery or effectiveness of this Settlement Agreement nor the performance of or compliance with the terms and conditions hereof by the Trustee will conflict with, or result in any violation of or default (with or without notice or lapse of time, or both) under, or give rise to any increased, additional, accelerated or guaranteed rights or entitlements of any Person under (i) any law applicable to the Trustee Parties or (ii) any agreement or document to which the Trustee is a party, except for any such conflict, violation, default, rights or entitlements that would not have a material adverse effect upon the Trustee's ability to perform his obligations under this Settlement Agreement. No consent, waiver, approval, order, permit or authorization of, or declaration or filing with, or notification to, any Person or governmental authority, other than the Bankruptcy Court, is required on the part of the Trustee in connection with the execution and delivery of this Settlement Agreement or the performance of or compliance with any of the provisions hereof by the Trustee.

6.  <u>Mutual Release/Covenant Not to Sue</u>. As of the Settlement Date, provided that the Settlement Amount is paid to the Trustee:

EACH OF THE TRUSTEE, ON BEHALF OF THE BANKRUPTCY ESTATE, ITS AGENTS AND ATTORNEYS FULLY AND FOREVER RELEASE, ACQUIT, AND DISCHARGE AND COVENANTS NOT TO SUE, COMMENCE, VOLUNTARILY AID, OR PROSECUTE AGAINST THE DEBTORS  ("STANDLEY RELEASED PARTIES") TO THE FULLEST EXTENT PERMITTED BY APPLICABLE STATE AND FEDERAL LAW, FROM ANY AND ALL CONDUCT, ACTS, AND/OR OMISSIONS OF THE DEBTORS, AND FROM ANY AND ALL CLAIMS, CAUSES OF ACTION, COUNTERCLAIMS, DEMANDS, CONTROVERSIES, COSTS, DEBTS, SUMS OF MONEY, ACCOUNTS, RECKONINGS, BONDS, BILLS, DAMAGES, OBLIGATIONS, LIABILITIES, OBJECTIONS, AND EXECUTIONS OF ANY NATURE, TYPE OR DESCRIPTION WHICH THE TRUSTEE ON BEHALF OF THE BANKRUPTCY ESTATE OR ITS ASSIGNS HAVE, MAY HAVE, OR COULD HAVE, AGAINST THE DEBTORS, RELATING TO THE CLAIMS AND CLAIMS UNDER THE BANKRUPTCY CODE WHETHER OR NOT IN CONNECTION WITH THE CLAIMS OR STANDLEY BANKRUPTCY CASE AT LAW OR IN EQUITY, IN CONTRACT, IN TORT, OR OTHERWISE, KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED UP TO AND INCLUDING THE DATE OF THE EXECUTION OF THIS AGREEMENT (THE "RELEASED CLAIMS"). THE TRUSTEE, ON BEHALF OF THE BANKRUPTCY ESTATE, ITS SUCCESSORS AND ASSIGNS FURTHER COVENANT NOT TO SUE THE DEBTORS ON

ACCOUNT OF ANY OF THE RELEASED CLAIMS OR OTHERWISE. THIS IS A GENERAL RELEASE OF ALL CLAIMS AND CAUSES OF ACTION OF EVERY KIND AND CHARACTER AS OF THE DATE OF THE EXECUTION OF THIS AGREEMENT, WHETHER HERETOFORE EXISTING OR HEREAFTER ACCRUING, AND WHETHER NOW KNOWN OR NOT KNOWN TO THE PARTIES, FOR OR BECAUSE OF ANY MATTER OR THING DONE, OMITTED, OR SUFFERED TO BE DONE BY THE DEBTORS PRIOR TO AND INCLUDING THE DATE OF THE EXECUTION OF THIS AGREEMENT. THIS GENERAL RELEASE IS TO BE INTERPRETED LIBERALLY TO EFFECTUATE MAXIMUM PROTECTION FOR THE STANDLEY RELEASED PARTIES.

SIMILARILY EACH OF THE DEBTORS, INDIVIDUALLY, IN ANY CAPACITY AND FOR THEMSELVES, AS APPLICABLE, AND FOR THEIR RESPECTIVE HEIRS SUCCESSORS, ATTORNEYS, AGENTS HEREBY FULLY AND FOREVER RELEASE, ACQUIT, AND DISCHARGE THE TRUSTEE AND THE BANKRUPTCY ESTATE (AND, AS APPLICABLE, ITS, PAST, PRESENT AND FUTURE REPRESENTATIVES, AGENTS AND ATTORNEYS) (THE "TRUSTEE RELEASED PARTIES") RELATING TO THE CLAIMS, AND COVENANT NOT TO SUE COMMENCE,VOLUNTARILY AID, FOMENT OR PROSECUTE AGAINST THE TRUSTEE PARTIES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE STATE AND FEDERAL LAW, FROM ANY AND ALL CONDUCT, ACTS, AND/OR OMISSIONS OF THE TRUSTEE PARTIES, AND FROM ANY AND ALL CLAIMS, CAUSES OF ACTION, COUNTERCLAIMS, DEMANDS, CONTROVERSIES, COSTS, DEBTS, SUMS OF MONEY, ACCOUNTS, RECKONINGS, BONDS, BILLS, DAMAGES, OBLIGATIONS, LIABILITIES, OBJECTIONS, AND EXECUTIONS OF ANY NATURE, TYPE OR DESCRIPTION WHICH THE DEBTORS OR THEIR ASSIGNS HAVE, MAY HAVE, OR COULD HAVE, AGAINST THE TRUSTEE PARTIES, RELATING TO THE CLAIMS,  AND CLAIMS UNDER THE BANKRUPTCY CODE WHETHER OR NOT IN CONNECTION WITH THE CLAIMS OR STANDLEY BANKRUPTCY CASE AT LAW OR IN EQUITY, IN CONTRACT, IN TORT, OR OTHERWISE, KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED UP TO AND INCLUDING THE DATE OF THE EXECUTION OF THIS AGREEMENT (THE "RELEASED CLAIMS"). THE DEBTORS, THEIR SUCCESSORS AND ASSIGNS FURTHER COVENANT NOT TO SUE THE TRUSTEE PARTIES ON ACCOUNT OF ANY OF THE RELEASED CLAIMS OR OTHERWISE. THIS IS A GENERAL RELEASE OF ALL STANDLEY CLAIMS AND CAUSES OF ACTION OF EVERY KIND AND CHARACTER CONCERNING THE TRUSTEE PARTIES AS OF THE DATE OF THE EXECUTION OF THIS AGREEMENT, WHETHER HERETOFORE EXISTING OR HEREAFTER ACCRUING, AND WHETHER NOW KNOWN OR NOT KNOWN TO THE PARTIES, FOR OR BECAUSE OF ANY MATTER OR THING DONE, OMITTED, OR SUFFERED TO BE DONE BY THE RELEASED PARTIES PRIOR TO AND INCLUDING THE DATE OF THE EXECUTION OF THIS AGREEMENT. THIS GENERAL RELEASE IS TO BE INTERPRETED LIBERALLY TO EFFECTUATE MAXIMUM PROTECTION FOR THE TRUSTEE RELEASED PARTIES.

NONE OF THE FOREGOING RELEASES SHALL RELEASE ANY PARTY FROM SUCH PARTIES' OBLIGATIONS UNDER THIS SETTLEMENT AGREEMENT.

Exhibit "A"

7.     The terms, provisions, and consequences of this Settlement Agreement have been explained to each of the Parties by each of the Parties' respective counsel. Each of the Parties acknowledge that they may hereafter discover facts different from, or in addition to, those which they now know or believe to be true with respect to the Bankruptcy Case and agree that this Settlement Agreement and the releases contained herein shall be and remain effective in all respects notwithstanding any discovery of such different or additional facts.

8.     For purposes of this Settlement Agreement, the following terms shall have the following meanings:

a) "Applicable Law" shall include, without limitation, any statute, law, rule or regulation, or any judgment, order, consent order, stipulated agreement, ordinance, writ, injunction, or decree of any Governmental Entity.

b) "Governmental Entity" shall mean any state or federal domestic court or tribunal in any domestic jurisdiction, or any federal, state, municipal or local government or other governmental body, agency, authority, district, department, commission, board, bureau, or other instrumentality, arbitrator, or arbitral body (domestic or foreign), including any joint action agency, public power authority, public utility district, or other similar political subdivision.

c) "Person" shall mean any individual, guardian, corporation, partnership, joint venture, trust, limited liability company, unincorporated organization, Governmental Entity, or other entity and also as "Person" is defined in the United States Bankruptcy Code.

d) "Final Order" shall mean an order of the Bankruptcy Court or any other court of competent jurisdiction (i) as to which the time to appeal or petition for certiorari has expired and as to which no timely appeal, or petition for certiorari shall then be pending; or (ii) if a timely appeal or writ of certiorari thereof has been sought, the order shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or reargument or rehearing on remand shall have been denied or resulted in no material modification of such order, and the time to take any further appeal, petition for certiorari, or move for modification of such order, or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Bankruptcy Procedure or other rules governing procedure in cases before the Bankruptcy Court may be filed with respect to such order shall not cause such order not to be final.

Exhibit "A"

e)  "Business Day" for purposes of this Settlement Agreement shall mean any day other than Saturday or Sunday or any other day on which banks in Dallas Texas are permitted or required to close.

9.  <u>No Exceptions or Limitations of Mutual Release</u>. The Parties hereby acknowledge and agree that there are no exceptions or limitations to the Mutual Release except as expressly provided herein.

## ACKNOWLEDGMENT OF THE PARTIES

10.  <u>Acknowledgment of the Parties</u>. The Debtors and the Trustee Parties each acknowledge that:

(i)  they have relied on their own independent investigation, and have not relied on any information or representations furnished by the other party or any representative or agent thereof with respect to the Claims in determining whether or not to enter into this Settlement Agreement;

(ii)  they have conducted their own due diligence, in connection therewith, as well as undertaken the opportunity to review information, ask questions and receive satisfactory answers concerning the Claims, if any, and the terms and conditions of this Settlement Agreement; and

(iii)  they possess the knowledge, experience and sophistication to allow it or them to fully evaluate and accept the merits and risks of entering into the transactions contemplated by this Settlement Agreement.

## BANKRUPTCY COURT APPROVAL

11.  <u>Covenants/No Bankruptcy Court Approval</u>. The Parties shall use commercially reasonable efforts to obtain Bankruptcy Court Approval of this Settlement Agreement from the Bankruptcy Court including by filing appropriate motions to approve this Settlement Agreement or Approval of Compromise. Each of the Parties shall cooperate with and support the other Party's efforts to obtain Bankruptcy Court Approval in all respects and shall take no actions inconsistent therewith. In the event that the Bankruptcy Court denies approval of this Settlement Agreement, this Settlement Agreement and all terms hereunder shall be deemed to be null, void and of no force

Exhibit "A"

and effect, the Parties shall be returned to the *status quo ante*, and no Party shall have any obligations to any other Party arising out of this Settlement Agreement.

**MISCELLANEOUS**

12.   <u>Notices</u>. All notices, demands and other communications hereunder shall be in writing and shall be deemed to have been duly given: (i) when personally delivered; (ii) upon actual receipt (as established by confirmation of receipt or otherwise) during normal business hours, otherwise on the first Business Day thereafter, if transmitted by facsimile, telecopier or electronic mail with confirmation of receipt; (iii) when mailed by certified mail, return receipt requested, postage prepaid; or (iv) when sent by overnight courier; in each case, to the following addresses, or to such other addresses as a Party may from time to time specify by notice to the other Party given pursuant hereto.

If to the Trustee Parties:

Mark A. Weisbart
Hayward PLLC
10501 North Central Expressway
Suite 106
Dallas, Texas 75231
Telephone: 972-755-7103
Facsimile:  972-755-7110
Email: mweisbart@Haywardfirm.com

If to the Debtors:

**ORENSTEIN LAW GROUP, P.C**.
Rosa R. Orenstein, Esq.
rosa@orenstein-lg.com
Nathan M. Nichols
<u>nathan@orenstein-lg.com</u>
P.O. Box 382538
711 S. Cedar Ridge Dr.
Duncanville, Texas 75138
Telephone: (214) 757-9101
Facsimile:  (972) 764-8110

Settlement Agreement and Mutual Release – Trustee and Debtors                                    Page 9

Exhibit "A"

13.    <u>Intended Beneficiaries</u>. This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto, and their respective heirs, successors and permitted assigns.

14.    <u>Governing Law</u>. THIS SETTLEMENT AGREEMENT AND THE RIGHTS AND DUTIES OF THE PARTIES HEREUNDER WILL BE GOVERNED BY AND CONSTRUED, ENFORCED AND PERFORMED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICTS OF LAWS THAT WOULD REQUIRE THE APPLICATION OF LAWS OF ANOTHER JURISDICTION.

15.    <u>Jurisdiction</u>. THE PARTIES ACKNOWLEDGE AND AGREE THAT THIS SETTLEMENT AGREEMENT SHALL BE PERFORMED IN THE STATE OF TEXAS AND THAT JURISDICTION OVER THIS SETTLEMENT AGREEMENT SHALL EXIST IN THE BANKRUPTCY COURT AND THAT ANY CLAIMS ARISING OUT OF OR RELATED IN ANY MANNER TO THIS SETTLEMENT AGREEMENT SHALL BE PROPERLY BROUGHT ONLY BEFORE THE BANKRUPTCY COURT. IF AND TO THE EXTENT THAT THE DEBTORS' BANKRUPTCY CASE IS CLOSED OR DISMISSED AND A REQUEST FOR RELIEF WOULD OTHERWISE BE BROUGHT IN THE BANKRUPTCY COURT IF THE DEBTORS' BANKRUPTCY CASE WAS NOT CLOSED OR DISMISSED, THE BANKRUPTCY COURT MAY REOPEN THE BANKRUPTCY CASE AND SHALL RETAIN JURISDICTION OVER THIS MATTER AND SHALL HAVE EXCLUSIVE JURISDICTION OVER THIS SETTLEMENT AGREEMENT AND ANY SUCH CLAIMS.

16.    <u>Entire Agreement</u>. This Settlement Agreement contains the entire agreement between the Parties with respect to the subject matter hereof and there are no agreements, understandings, representations, or warranties between the Parties other than those set forth or referred to herein.

Exhibit "A"

This Settlement Agreement may not be amended other than by a writing executed by all of the Parties.

17.     Severability. Wherever possible, each provision of this Settlement Agreement shall be interpreted in such manner as to be effective and valid under Applicable Law; however, in case any provision of this Settlement Agreement shall be determined to be invalid, illegal or unenforceable for any reason, the remaining provisions of this Settlement Agreement shall be unaffected and unimpaired thereby, and shall remain in full force and effect, to the fullest extent permitted by Applicable Law.

18.     Reliance on Representations. Each Party hereby expressly warrants and represents to the others that no promise or agreement that is not expressed has been made to him, her, or it in executing this Settlement Agreement, and that none of the Parties is relying upon any statement or representation of any agent of the Parties. The Parties agree and stipulate that all representations, warranties, agreements, covenants, and obligations herein are material, shall be deemed to have been relied upon by any other Party, and shall survive the Settlement Date.

19.     Binding Agreement. This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, successors, and assigns.

20.     No Admission of Liability. This Settlement Agreement is not an admission of any liability but is a compromise and settlement, and this Settlement Agreement shall not be treated as an admission of liability. All communications (whether oral or in writing) between and/or among the Parties, their counsel and/or their respective representatives relating to, concerning or in connection with this Settlement Agreement, or the matters covered hereby and thereby, shall be governed and protected in accordance with the Federal Rule of Evidence 408 or other similar state rule of evidence to the fullest extent permitted by Applicable Law.

Exhibit "A"

21.    <u>Interpretation</u>. This Settlement Agreement has been jointly drafted by the Parties at arm's length and each Party has had ample opportunity to consult with independent legal counsel. No provision or ambiguity in this Settlement Agreement shall be resolved against any Party solely by virtue of its participation in the drafting of this Settlement Agreement.

22.    <u>Attorney's Fees</u>. Each Party shall be responsible for the payment of (a) its own costs and expenses (including reasonable attorneys' fees), in connection with this Settlement Agreement. Nevertheless, in any action or proceeding to enforce this Settlement Agreement, the prevailing Party shall be entitled to payment of its reasonable costs and expenses (including reasonable attorneys' fees).

23.    <u>Captions</u>. The captions of this Settlement Agreement are for convenience only and are not a part of this Settlement Agreement and do not in any way limit or amplify the terms and provisions of this Settlement Agreement and shall have no effect on its interpretation.

24.    <u>Counterparts</u>. This Settlement Agreement may be executed in counterparts, by either an original signature or signature transmitted by facsimile transmission or other similar process and each copy so executed shall be deemed to be an original and all copies so executed shall constitute one and the same agreement.

25.    <u>Facsimile Signatures</u>. This Settlement Agreement may be executed by facsimile signatures or signature delivered electronically, and such facsimile signatures or signature delivered electronically will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile signatures.

26.    <u>Further Assurances</u>. Each Party agrees that from time to time it will reasonably promptly execute and deliver all further agreements, instruments, documents and certificates, and shall make

Exhibit "A"

or cause to be made such recordings or registrations and take all further actions, as may be necessary or reasonably desirable or as may be reasonably requested by a Party hereto to evidence any of the terms and provisions of this Settlement Agreement.

IN WITNESS WHEREOF THE PARTIES HERETO have hereby executed this Settlement Agreement on the date indicated in the first paragraph of this Settlement Agreement.

MARK A. WEISBART
CHAPTER 7 TRUSTEE OF
BANKRUPTCY CASE


By: _____

Title: TRUSTEE


JASON TROY STANDLEY, A NATURAL PERSON

_____
Jason Troy Standley


SHANNON DAVINA STANDLEY, A NATURAL PERSON

_____
Shannon Davina Standley

Exhibit "A"

Label Matrix for local noticing
0540-4
Case 22-40689
Eastern District of Texas
Sherman
Thu Jun 22 16:57:21 CDT 2023

AFG Company, Inc
1900 Champagne Boulevard
Grapevine, TX 76051-7373

American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern, PA 19355-0701

American Tire Distributors, Inc.
P O Box 3145
Huntersville NC  28070-3145

BTH Bank NA
6925 Preston Road
Dallas TX 75205-1136

BTH Bank, National Association
c/o Cliff A. Wade, Baker Lopez
5728 LBJ Freeway, Suite 150
Dallas, TX 75240-6340

BTH Bank, National Association
c/o Cliff A. Wade, Baker Lopez
5728 LBJ Freeway, Suite 150
Dallas, Texas 75240-6340

Bart Dalton
Katarzyna Brozynski Brozynski & Dalton
5700 Tennyson Parkway
Suite 300
Plano TX 75024-3595

C Daniel Herrin
Herrin Law
4925 Greenville Avenue
Suite 455
Dallas TX 75206-4055

Capital One Auto Finance, a division of Capi
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

Capital One Mastercard
P O Box 60599
City of Industry  CA 91716-0599

Capital One N.A.
4515 N Santa Fe Ave
Oklahoma City, OK 73118-7901

Careguard Warranty Services Inc
1900 Champagne Boulevard
Grapevine TX 76051-7373

Cigna
P O Box 29221
Phoenix AZ  85038-9221

Cliff Wade
Baker Lopez
5728 LBJ Freeway
Suite 150
Dallas TX 75240-6340

CoServ Electric
7701 S Stemmons
Corinth TX 76210

CoServe Power
7701 N Stemmons Freeway
Corinth TX  76210

Cross Timbers Water Supply Corporation
2032 E Hickory Hill Road
Argyle TX  76226-3125

Denton County
c/o Lee Gordon
PO Box 1269
Round Rock, TX 78680-1269

(p)DENTON CAD
3911 MORSE ST
DENTON TX 76208-6331

Dr. Brady Giesler
5000 Long Prairie Road
#1000
Flower Mound TX 75028-2796

Frontier Communications
P O Box 740407
Cincinnati OH  45274-0407

Chelsea Leiann Futrell
Baker Lopez
5728 LBJ Freeway
Ste. 150
Dallas, TX 75240-6340

Michael Gilmore
Hayward PLLC
10501 N. Central Expressway, Suite 106
Dallas, TX 75231-2203

(p)MICHAEL REED OR LEE GORDON
PO BOX 1269
ROUND ROCK TX 78680-1269

Melissa S. Hayward
Hayward PLLC
10501 N. Central Expwy.
Suite 106
Dallas, TX 75231-2203

Daniel Herrin
Herrin Law, PLLC
12001 N Central Expy
Suite 920
Dallas, TX 75243-3700

Internal Revenue Service
P O Box 7346
Philadelphia PA  19101-7346

JSS Reinsurance
11600 Ranch Road
Argyle TX 76226-6412

Jason Standley Trust
c/o Paul Noonan Trustee
1835 Forms Drive
Suite 120
Carrollton TX 75006-3700

Kenneth Standley
3314 Courtyard Place
Farmers Branch TX 75234-3758

Kenneth Standley
c/o Herrin Law, PLLC
4925 Greenville Ave., Suite 455
Dallas, TX 75206-4055

Kimberly Guest
Guest & Associates
108 W Front Street
De Kalb TX 75559-1308

LVNV Funding, LLC
Resurgent Capital Services
PO Box 10587
Greenville, SC 29603-0587

John P Lewis Jr.
Hayward PLLC
10501 North Central Expressway
Ste 106
Dallas, TX 75231-2203

McClenny Moseley & Associates
1415 Louisiana Suite 2900
Houston TX 77002-7581

Mediation United Recovery Service
2045 Mt Zion Road
Suite 115
Morrow GA 30260-3313

Rosa R. Orenstein
Orenstein Law Group, P.C.
P.O. Box 382538
711 S. Cedar Ridge Drive
Duncanville, TX 75138-3737

PM Standley Corporation
1835 Forms Drive
Carrollton TX 75006-3700

Paul Noonan Trustee
1835 Forms Drive
Suite 120
Carrollton TX 75006-3700

Paul Pogue Trustee
1835 Forms Drive
Suite 120
Carrollton TX 75006-3700

Professional Finance Collection Agency
5754 W 11th Street
Suite 100
Greeley CO 80634-4811

Republic Trash
1820 East Sky Haror Circle South
Suite 150
Phoenix AZ 85034-4875

Shannon Davina Standley
11600 Ranch Road
Copper Canyon TX 76226-6412

Shellpoint Mortgage
P O Box 51850
Livonia MI 48151-5850

Jason Troy Standley
11600 Ranch Road
Copper Canyon, TX 76226-6412

Texas Health Presbyterian Hospital
Flower Mound
4400 Long Prairie Road
Flower Mound TX 75028-1892

U.S. Attorney General
Department of Justice
Main Justice Building
10th & Constitution Ave., NW
Washington, DC 20530-0001

US Anesthesia Partners of Texas
12222 Merit Drive
Suite 700
Dallas TX 75251-2237

US Trustee
Office of the U.S. Trustee
110 N. College Ave.
Suite 300
Tyler, TX 75702-7231

United States Attorneys Office
110 North College Avenue
Suite 700
Tyler TX 75702-0204

Cliff A Wade
Baker Lopez
5728 LBJ Freeway
Ste 150
Dallas, TX 75240-6340

(p)MARK A WEISBART
ATTN THE LAW OFFICE OF MARK A WEISBART
10501 N CENTRAL EXPY SUITE 106
DALLAS TX 75231-2203

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Denton County Appraisal District
P O Box 50747
Denton TX 76206

Lee Gordon
McCreary Veselka Bragg & Allen, PC
PO Box 1269
Round Rock, TX 78665

Mark A. Weisbart
Chapter 7 Bankruptcy Trustee
10501 N Central Expy Suite 106
Dallas, TX 75231-2203

(d)Mark A. Weisbart
Hayward PLLC
10501 N Central Expy Suite 106
Dallas, TX 75231-2203

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern  PA 19355-0701

(d)Kenneth Standley
3314 Courtyard Place
Farmers Branch, TX 75234-3758

(d)Shannon Davina Standley
11600 Ranch Road
Copper Canyon, TX 76226-6412

(d)The PM Standley Corporation
1835 Forms Drive
Carrollton TX 75006-3700

End of Label Matrix
Mailable recipients    52
Bypassed recipients     4
Total                  56